FILED
IN OPEN COURT
OCT - 8 2025
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **UNDER SEAL** |
| v. | ) | CRIMINAL NO. 2:25-CR-121 |
| **ANDRELIO CASTAÑO ROJAS** | ) | 18 U.S.C. § 1956(h)<br>Conspiracy to Commit Money Laundering<br>(Count 1) |
| ***Defendant.*** | ) | 18 U.S.C. § 1956(a)(1)(B)(i)<br>Money Laundering<br>(Counts 2 - 3) |
| | ) | 18 U.S.C. § 1957<br>Money Laundering<br>(Counts 4 - 5) |
| | ) | 18 U.S.C. § 982(a)(1)<br>Criminal Forfeiture |

**INDICTMENT**

October 2025 TERM - at Norfolk, Virginia

THE GRAND JURY CHARGES THAT:

INTRODUCTION

Each year drug traffickers in the United States generate billions of dollars of drug trafficking proceeds. The drugs are sold for cash in the United States. To profit effectively from this illegal activity, drug traffickers must find a way to transfer large sums of cash through the financial system to avoid detection by law enforcement. Trade-based money laundering seeks to legitimize the illegal origin of the proceeds of crime.

BACKGROUND

1. **ANDRELIO CASTAÑO ROJAS**, was a resident of Colombia, South America who arranged for drug trafficking proceeds to be laundered in the United States.

2. Administración Y Servicios G Asociados SAS LLC (LLC 1) was a U.S. based company, which was registered as a limited liability corporation in the State of Florida. **ANDRELIO CASTAÑO ROJAS** owned and controlled LLC 1, which was a computer parts import/export company.

3. Acron Technology, LLC (LLC 2) was a U.S. based company, which was registered as a limited liability corporation in the State of Florida. **ANDRELIO CASTAÑO ROJAS** owned and controlled LLC 2, which was a computer parts import/export company.

4. **ANDRELIO CASTAÑO ROJAS** owned and controlled accounts at domestic financial institutions. The accounts were used for receiving and wire transferring drug trafficking proceeds to multiple wholesale electronic businesses.

| Domestic Financial Institution | LLC 1 | | LLC 2 | |
|---|---|---|---|---|
| | Account Open Date | Account Closure Date | Account Open Date | Account Closure Date |
| BANK 1 | 2/2/2017 | 6/30/2020 | [redacted] | [redacted] |
| BANK 2 | 10/13/2020 | 6/25/2021 | 10/13/2020 | 6/25/2021 |
| BANK 3 | 7/12/2021 | 3/17/2023 | 2/23/2022 | 3/17/2023 |

5. BUSINESS 1, the identity of which is known to the Grand Jury, was a Doral, Florida based business involved in selling consumer electronics. From LLC 1's accounts, **ANDRELIO CASTAÑO ROJAS** arranged for BUSINESS 1's accounts to receive drug trafficking proceeds for the purchase of consumer electronics that were then shipped to and sold in Bogota, Colombia.

6. INDIVIDUAL 1, an associate of **ANDRELIO CASTAÑO ROJAS**, delivered approximately $30,000 in bulk U.S. currency to BUSINESS 1 on May 29, 2021.

7. INDIVIDUAL 2, an associate of **ANDRELIO CASTAÑO ROJAS**, delivered approximately $80,000 in bulk U.S. currency to BUSINESS 1 on November 8, 2021.

8. INDIVIDUAL 3, an associate of **ANDRELIO CASTAÑO ROJAS**, between on or about January 17, 2022, to on or about August 31, 2023, delivered approximately $1,341,034 in bulk U.S. currency to BUSINESS 1.

9. INDIVIDUAL 4, an associate of **ANDRELIO CASTAÑO ROJAS**, between on or about February 16, 2023, to on or about March 9, 2023, delivered approximately $51,000 in bulk U.S. currency to BUSINESS 1.

10. INDIVIDUAL 5, an associate of **ANDRELIO CASTAÑO ROJAS**, between on or about August 21, 2023, to on or about March 14, 2025, delivered approximately $95,028 in bulk U.S. currency to BUSINESS 1.

11. INDIVIDUAL 6, an associate of **ANDRELIO CASTAÑO ROJAS**, was an authorized user on LLC 1's account at BANK 2.

## GENERAL ALLEGATIONS

12. **ANDRELIO CASTAÑO ROJAS,** together with other persons both known and unknown to the Grand Jury, hereafter referred to collectively as the Drug Trafficking and Money Laundering Organization (DTMLO), conspired to launder drug trafficking proceeds, obtained from the sale of illegal drugs, which included cocaine, in Hillside, Illinois, San Antonio, Texas, Richmond, Virginia, Anaheim, California, Sunrise, Florida, Boston, Massachusetts, New York, and elsewhere.

13. The DTMLO accepted what are known as "money contracts" to arrange for the drug trafficking proceeds, which was bulk U.S. currency, in the United States to be delivered through couriers, and then deposited into bank accounts in the United States. The proceeds were then wire transferred into the accounts of various businesses in the United States to conceal their nature, location, source, ownership and control.

14. The DTMLO took multiple measures to ensure that the bulk U.S. currency was safely repatriated to its owners without being detected by law enforcement. For example, the organization provided couriers with a serial number on a dollar bill, and the couriers compared serial numbers to ensure they were transferring the bulk U.S. currency to the right party. Sometimes, the organization used verbal codes in addition to dollar bill serial numbers. That is, when the bulk U.S. currency was transferred between the couriers, each courier was also required to have the same code to ensure each other that they were meeting with the right party.

15. The couriers, working on behalf of the DTMLO, carried the money in a concealed manner, such as in duffel bags, when delivering it to other DTMLO couriers.

16. Agents from the Drug Enforcement Administration (DEA), acting in an undercover capacity, infiltrated the DTMLO. The undercover agents posed as a money laundering service through which they arranged to receive the drug trafficking proceeds from the DTMLO's couriers. The DEA undercover agents deposited the bulk U.S. currency into undercover bank accounts in the United States and then wire transferred the funds to **ANDRELIO CASTAÑO ROJAS** and other members of the DTMLO at the DTMLO's direction. The DTMLO paid the undercover agents a commission for performing this service. By infiltrating the DTMLO, the DEA identified many of its associates and entities affiliated with the DTMLO.

17. LLC 1's accounts at BANK 1, BANK 2, and BANK 3 received DTMLO drug trafficking proceeds from undercover bank accounts, including in the Eastern District of Virginia.

18. **ANDRELIO CASTAÑO ROJAS** arranged for the drug trafficking proceeds to be wire transferred from LLC 1's bank accounts to the bank accounts of BUSINESS 1, and other domestic businesses, for the purpose of purchasing wholesale electronics for export to Colombia.

19. **ANDRELIO CASTAÑO ROJAS** delivered, or arranged for INDIVIDUAL 1, INDIVIDUAL 2, INDIVIDUAL 3, INDIVIDUAL 4, INDIVIDUAL 5 to deliver, on his behalf, bulk U.S. currency to BUSINESS 1 to pay for the electronics.

## COUNT ONE

**Money Laundering Conspiracy**
**Title 18, United States Code, Section 1956(h)**

20. From in or about January 2018 and continuing to in or about March 2025, in the Eastern District of Virginia, and elsewhere, the defendant, **ANDRELIO CASTAÑO ROJAS**, conspired with others known and unknown to the Grand Jury to commit an offense against the United States, in violation of Title 18, United States Code, Section 1956(h), a conspiracy to launder drug trafficking proceeds, including:

(a) to knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved proceeds of a specified unlawful activity, that is, the felonious manufacture, importation, receiving, concealment, buying, selling and otherwise dealing in controlled substances, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew the property involved in the financial transaction represented the

proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(b) knowingly engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, the transfer of such property having been derived from a specified unlawful activity, that is, the felonious manufacture, importation, receiving, concealment, buying, selling and otherwise dealing in controlled substances in violation of Title 18, United States Code, Section 1957.

Object of the Conspiracy

21. The object of the conspiracy was to move bulk U.S. currency consisting of proceeds from illegal drug trafficking from the Eastern District of Virginia, the Southern District of Florida and elsewhere, and integrate the funds into the U.S. financial system without detection by law enforcement. The object of the conspiracy was also to use the proceeds from illegal drug trafficking to purchase computer parts and consumer electronics in the United States for export to Colombia. The conspiracy included violations of Title 18, United States Code, Sections 1956 and 1957.

Ways, Manner and Means of the Conspiracy

22. The following were among the ways, manner and means of the conspiracy used by **ANDRELIO CASTAÑO ROJAS**, and others known and unknown to the Grand Jury to accomplish the object of the conspiracy:

(a) Arranging pickups of substantial amounts of bulk U.S. currency from DTMLO couriers in the United States;

(b) Using verbal passcodes and dollar bill serial numbers to confirm that the bulk U.S. currency was delivered to the correct DTMLO courier;

(c) Further distributing the bulk U.S. currency, through multiple wire transfers, to various bank accounts located in the United States held in the names of domestic-based businesses, including BUSINESS 1; and

(d) A portion of the domestic bulk U.S. currency was used to pay for electronics and computer products that were shipped to Colombia for resale.

Acts in Furtherance of the Conspiracy

In furtherance of the conspiracy and to accomplish one or more of the purposes thereof, at least one of the following acts, among others, was committed in the Eastern District of Virginia, and elsewhere, within the jurisdiction of this Court:

**Undercover DTMLO Bulk U.S. Currency Pickups and Subsequent Transfers to LLC 1 and LLC 2's accounts**

23. Between on or about January 31, 2018, and November 22, 2021, DEA undercover agents picked up bulk U.S. currency from DTMLO couriers in various cities across the United States.

24. The trafficking proceeds picked up from DTMLO couriers were deposited into undercover bank accounts and subsequently wire transferred to other domestic bank accounts at the direction of the DTMLO.

25. Between on or about January 31, 2018, and November 22, 2021, **ANDRELIO CASTAÑO ROJAS**, working with the DTMLO, and other known and unknown to the Grand Jury, arranged for LLC 1 and LLC 2's accounts at BANK 1, BANK 2, and BANK 3, to receive approximately $2,072,396 of the drug trafficking proceeds.

26. Below are deliveries and subsequent transfers to LLC 1's business accounts from an undercover bank account opened in the Eastern District of Virginia.

| Money Contract Date | Pickup Location | Money Contract Amount | LLC 1 Bank | Proceeds Transferred to LLC 1's Accounts |
|---|---|---|---|---|
| 5/20/2021 | Hillside, Ill | $149,890 | BANK 2 | • $43,780<br>• $21,563 |
| 6/8/2021 | San Antonio, TX | $150,000 | BANK 2 | • $49,345 |
| 6/9/2021 | Richmond, VA | $149,980 | BANK 2 | • $20,000 |
| 8/12/2021 | San Antonio, TX | $150,360 | BANK 3 | • $27,161<br>• $25,000 |

27. Additional deliveries and subsequent transfers were made to LLC 1's business account from undercover bank accounts in the Southern District of Florida, and elsewhere.

**Payments made by Wire Transfer to BUSINESS 1**

28. Between on or about October 13, 2020, to on or about June 25, 2021, **ANDRELIO CASTAÑO ROJAS** caused approximately $343,953 to be transferred from LLC 1's account at BANK 2 to the bank account of BUSINESS 1, at least a portion of which was drug trafficking proceeds, for the payment of consumer electronics.

29. Between on or about July 12, 2021, to on or about March 17, 2023, **ANDRELIO CASTAÑO ROJAS** caused approximately $538,040 to be transferred from LLC 1's account at BANK 3 to the bank account of BUSINESS 1, at least a portion of which was drug trafficking proceeds, for the payment of consumer electronics.

**Payments Made in Bulk U.S. Currency to BUSINESS 1**

30. Between on or about May 19, 2021, to March 14, 2025, **ANDRELIO CASTAÑO ROJAS**, INDIVIDUAL 1, INDIVIDUAL 2, INDIVIDUAL 3, INDIVIDUAL 4, and INDIVIDUAL 5, delivered approximately $1,848,675 in bulk U.S. currency to BUSINESS 1 for the payment of consumer electronics. Specifically:

| Date | Amount USD | Delivered by |
|---|---|---|
| 5/19/2021 | $30,000 | INDIVIDUAL 1 |
| 9/1/2021 | $52,038 | **ANDRELIO CASTAÑO ROJAS** |

| | | |
|---|---|---|
| 9/3/2021 | $18,142 | **ANDRELIO CASTAÑO ROJAS** |
| 11/8/2021 | $80,000 | INDIVIDUAL 2 |
| 1/12/2022 | $12,000 | **ANDRELIO CASTAÑO ROJAS** |
| 1/17/2022 | $52,350 | INDIVIDUAL 3 |
| 1/24/2022 | $59,850 | INDIVIDUAL 3 |
| 2/10/2022 | $40,000 | INDIVIDUAL 3 |
| 2/16/2022 | $63,700 | INDIVIDUAL 3 |
| 2/28/2022 | $45,000 | INDIVIDUAL 3 |
| 3/11/2022 | $30,000 | INDIVIDUAL 3 |
| 3/28/2022 | $65,400 | INDIVIDUAL 3 |
| 4/28/2022 | $23,000 | INDIVIDUAL 3 |
| 5/31/2022 | $22,000 | INDIVIDUAL 3 |
| 6/6/2022 | $60,000 | INDIVIDUAL 3 |
| 6/20/2022 | $30,000 | INDIVIDUAL 3 |
| 7/1/2022 | $24,323 | INDIVIDUAL 3 |
| 8/11/2022 | $26,125 | INDIVIDUAL 3 |
| 8/25/2022 | $60,000 | INDIVIDUAL 3 |
| 9/6/2022 | $40,000 | INDIVIDUAL 3 |
| 9/16/2022 | $40,000 | INDIVIDUAL 3 |
| 10/3/2022 | $55,277 | INDIVIDUAL 3 |
| 10/11/2022 | $30,000 | INDIVIDUAL 3 |
| 11/2/2022 | $28,000 | INDIVIDUAL 3 |
| 12/5/2022 | $40,000 | INDIVIDUAL 3 |
| 12/9/2022 | $40,000 | INDIVIDUAL 3 |
| 1/3/2023 | $22,000 | INDIVIDUAL 3 |
| 1/9/2023 | $44,000 | INDIVIDUAL 3 |
| 1/25/2023 | $45,000 | INDIVIDUAL 3 |
| 1/31/2023 | $25,000 | **ANDRELIO CASTAÑO ROJAS** |
| 2/14/2023 | $20,000 | INDIVIDUAL 3 |
| 2/16/2023 | $25,000 | INDIVIDUAL 4 |
| 2/21/2023 | $25,000 | INDIVIDUAL 3 |
| 2/27/2023 | $16,000 | INDIVIDUAL 4 |
| 2/28/2023 | $25,000 | INDIVIDUAL 3 |
| 3/9/2023 | $10,000 | INDIVIDUAL 4 |
| 3/13/2023 | $56,053 | INDIVIDUAL 3 |
| 3/28/2023 | $69,256 | INDIVIDUAL 3 |
| 4/12/2023 | $60,000 | INDIVIDUAL 3 |
| 5/15/2023 | $19,900 | INDIVIDUAL 3 |
| 6/5/2023 | $29,900 | INDIVIDUAL 3 |

| | | |
|---|---|---|
| 7/13/2023 | $20,000 | INDIVIDUAL 3 |
| 8/21/2023 | $42,520 | INDIVIDUAL 5 |
| 8/31/2023 | $29,900 | INDIVIDUAL 3 |
| 10/25/2023 | $20,000 | INDIVIDUAL 5 |
| 1/16/2024 | $10,000 | INDIVIDUAL 5 |
| 9/24/2024 | $906.00 | **ANDRELIO CASTAÑO ROJAS** |
| 12/5/2024 | $9,027 | **ANDRELIO CASTAÑO ROJAS** |
| 1/23/2025 | $40,000 | **ANDRELIO CASTAÑO ROJAS** |
| 2/10/2025 | $52,000 | **ANDRELIO CASTAÑO ROJAS** |
| 2/25/2025 | $42,500 | **ANDRELIO CASTAÑO ROJAS** |
| 3/14/2025 | $22,508 | INDIVIDUAL 5 |

**Payment Made by Check to BUSINESS 1**

31. On or about August 11, 2021, INDIVIDUAL 6 issued a check for approximately $80,000 to BUSINESS 1 for the payments of consumer electronics.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS TWO AND THREE

**Laundering of Monetary Instruments**
**(Concealment Money Laundering)**
**Title 18, United States Code, Section 1956(a)(1)(B)(i)**

On or about the dates indicated below, in the Eastern District of Virginia and elsewhere within the jurisdiction of this Court, the defendant, **ANDRELIO CASTAÑO ROJAS**, aiding and abetting others known and unknown to the Grand Jury, did knowingly conduct and attempt to conduct the following financial transactions affecting interstate commerce which involved the proceeds of specified unlawful activity, that is the felonious manufacture, importation, receiving, concealment, buying, selling and otherwise dealing in controlled substances, knowing that the property involved in the financial transactions represented proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and

disguise the nature, location, source, ownership, and control of the proceeds of the aforementioned specified unlawful activity:

| Count | Date of Transaction | Financial Transaction |
|---|---|---|
| 2 | May 24, 2021 | $43,780 transfer from an undercover bank account to LLC 1's account at BANK 2 |
| 3 | May 25, 2021 | $21,563 transfer from an undercover bank account to LLC 1's account at BANK 2 |

All in violation of Title 18, United States Code, Sections 1956 (a)(1)(B)(i) and 2.

**COUNTS FOUR AND FIVE**

**Laundering of Monetary Instruments**
**Title 18, United States Code, Section 1957**

On or about the dates indicated below, in the Eastern District of Virginia and elsewhere within the jurisdiction of this Court, the defendant, **ANDRELIO CASTAÑO ROJAS**, aiding and abetting others known and unknown to the Grand Jury, did knowingly engage in the following monetary transactions, by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, and that derived from a specified unlawful activity, that is, the felonious manufacture, importation, receiving, concealment, buying, selling and otherwise dealing in controlled substances:

| Count | Date of Transaction | Monetary Transaction |
|---|---|---|
| 4 | May 24, 2021 | $43,780 transfer from an undercover bank account to LLC 1's account at BANK 2 |
| 5 | May 25, 2021 | $21,563 transfer from an undercover bank account to LLC 1's account at BANK 2 |

All in violation of Title 18, United States Code, Sections 1957(a) and 2.

**FORFEITURE ALLEGATION**

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT:

1. The defendant, if convicted of any of the violations alleged in this indictment, shall forfeit to the United States, as part of the sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property, real or personal, involved in the violation, or any property traceable to that property.

2. If any property that is subject to forfeiture above is not available, it is the intention of the United States to seek an order forfeiting substitute assets pursuant to Title 21, United States Code, Section 853(p) and Federal Rule of Criminal Procedure 32.2(e).

(In accordance with Title 18, United States Code, Section 982(a)(1).)

*United States v. Andrelio Castaño Rojas,* Criminal No. 2:25-cr-121

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.

A TRUE BILL:

REDACTED COPY

____________________________
FOREPERSON


LINDSEY HALLIGAN
UNITED STATES ATTORNEY

By: ________________________
Kevin Hudson
Assistant United States Attorney
Graham Stolle
Special Assistant United States Attorney
United States Attorney's Office
101 West Main Street, Suite 6000
Norfolk, VA 23510
Office Number: 757-441-6331
Email Address: kevin.hudson@usdoj.gov
graham.stolle2@usdoj.gov

Margaret A. Moeser
CHIEF, MONEY LAUNDERING AND ASSET RECOVERY SECTION

By: ________________________
Mark Irish
Senior Trial Counsel
Yuliana Reyes
Trial Attorney
Money Laundering and Asset Recovery Section
1400 New York Ave NW
Washington, DC 20004
Email Address: mark.irish2@usdoj.gov
yuliana.reyes@usdoj.gov